# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ANDREW EL-MASSRI,

              Plaintiff,

v.

NEW HAVEN CORRECTIONAL
CENTER, DEPUTY WARDEN
MARMORA, LIEUTENANT
CACIOLI, LIEUTENANT LEWIS,
LIEUTENANT WILLIAMS,
OFFICER HEBERT, OFFICER
McGIVNEY, NURSE GOODE,

              Defendants.

Civil Action No.
No. 3:18-cv-1249 (CSH)

**SEPTEMBER 25, 2018**

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

## I. INTRODUCTION

*Pro se* plaintiff Andrew El-Massri, an inmate currently incarcerated at the Hartford

Correctional Center[1] in Hartford, Connecticut, has filed a civil rights complaint *pro se* pursuant to

---

[1] El-Massri is currently a pretrial detainee at Hartford Correctional Center with several criminal charges pending in Connecticut Superior Court from an arrest in January 2018, including interfering with an officer, third-degree larceny, illegal possession of a weapon in a motor vehicle, criminal mischief, improper use of a license plate or registration, and criminal trover. *See State v. El-Massri*, Nos. H15NCR18-0068824T and H15N-MV18-0244439-T. However, the incident which gave rise to this federal action occurred on November 26, 2015, and El-Massri has identified himself as "a state prisoner" in his complaint. Doc. 1 (Complaint), at 2. The Court takes judicial notice that on December 20, 2010, El-Massri was found guilty of interfering with a police officer and/or resisting arrest under Conn. Gen. Stat. § 53a-167a and sentenced to six months in prison. *See State v. El-Massri*, No.U04W-CR10-0395487-S (Conn. Super. Ct. 2010). Plaintiff has failed to indicate the particular sentence he was serving at the time of the alleged constitutional violations in this action.

42 U.S.C. § 1983 against the New Haven Correctional Center ("NHCC"), where he was previously

confined, and seven of the facility's employees in their individual and official capacities:  Deputy

Warden Marmora, Lieutenant Cacioli, Lieutenant Lewis, Lieutenant Williams, Officer Hebert,

Officer McGivney, and Nurse Goode.  El-Massri is suing the defendants for violating the Eighth

Amendment prohibition against cruel and unusual punishment and seeks monetary, injunctive, and

declaratory relief.  Doc. 1 (Complaint), at 8-9.  On August 7, 2018, this Court granted El-Massri's

motion to proceed *in forma pauperis*.  *See* Doc. 6, 7.  For the following reasons, his complaint is

dismissed in part.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss

any portion that "(1) is frivolous,  malicious, or  fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *See* 28

U.S.C.  § 1915A(b)(1)-(2).  Although highly detailed allegations are not required, the complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its

face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S

544, 570 (2007)).[2]  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-

defendant-unlawfully-harmed-me accusation."  *Id*.  "A pleading that offers 'labels and conclusions'

---

[2]  The Second Circuit has consistently adhered to the United States Supreme Court's plausibility standard set forth in *Iqbal*.  *See, e.g., Giunta v. Dingman,* 893 F.3d 73, 79 (2d Cir. 2018); *Bd.-Tech Elec. Co. v. Eaton Corp.,* No. 17-3829-CV, __F. App'x__, 2018 WL 2901336, at *1 (2d Cir. June 11, 2018); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).

or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir.2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir.2011) (same).  Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir.2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)(*per curiam*)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin*

*v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id*

### III.   FACTUAL ALLEGATIONS

On November 26, 2015, at approximately 4:10 p.m., while housed at NHCC, El-Massri was involved in a physical altercation with another inmate. Doc. 1, ¶ 7. Correction Officer Streat reacted by calling a "code blue," to which defendants Cacioli, Williams, Lewis, Hebert, McGivney, and Goode responded. *Id.*, ¶ 8. Cacioli, Williams, and Lewis gave El-Massri several commands to stop fighting, and he allegedly complied. *Id.*, ¶ 9. Nevertheless, Cacioli and Lewis sprayed "chemical agents directly into [El-Massri's] face and eyes at close range." *Id.* Contrary to what El-Massri refers to as prison "directives," the defendants failed to "sign on to a a hand-held camera"

during this incident. *Id.*

After El-Massri was sprayed with the chemical agent, Williams and Hebert "slammed [ El-Massri] onto his face," causing him to sustain "a superficial laceration under his right eye."[3] *Id.*, ¶ 10. They then placed restraints on El-Massri. *Id.*, ¶ 11. At that point, El-Massri requested "to be decontaminated." *Id.*, ¶ 12. Although he was escorted to the "center corridors shower," Plaintiff was "not allowed to properly decontaminate" by showering; however, the other inmate who "was involved in this incident" was permitted to shower. *Id.*, ¶ 11. Plaintiff was then escorted to the Foxtrot Unit Center #1, where his restraints were removed and he was strip searched. *Id.*, ¶ 12. He again requested to shower to decontaminate, but his request was denied. *Id.*

El-Massri spent the next three days and nights in the Foxtrot Unit without an opportunity to shower. *Id.,* ¶ 13. In his words, he was "forced to burn in chemical agent" during this time period. *Id*. He asked "[a]ll officers and nurses he came into contact with to allow him to decontaminate" himself, but all such requests were "unreasonably denied." *Id.* He also did not receive any treatment for the superficial laceration under his right eye. *Id.* Nurse Goode was one of the nurses who failed to treat his laceration and/or to provide him with the opportunity to shower. *Id.*, ¶ 14.

After reviewing the November 26, 2015 incident, Deputy Warden Marmora wrote a report stating that she "approved [of] the conduct" of the defendant officers and their "use of force" on El-Massri. *Id.*, ¶ 15. Plaintiff claims that the defendant officials' supervision and training led to the constitutional deprivations alleged in his complaint. *Id.* He also alleges that the incident reports

---

[3] Plaintiff claims that Williams and Hebert used such an excessive amount of chemical agent when they were spraying him that Williams had to be "relieved" of duty due to his exposure. Doc. 1, ¶ 10. Also, it was only after the officers had slammed El-Massri to the ground that they "sign[ed] onto the hand-held camera." *Id.*

prepared by the defendant officials regarding the events of November 26, 2015, were "falsified" in order to "cover up their wrongdoing." *Id.*

## IV.  ANALYSIS

In his Complaint, El-Massri asserts three claims.  In Count I, he alleges that Cacioli, Lewis, Williams, and Hebert violated his Eighth Amendment right to be free from cruel and unusual punishment when they used "excessive force" in response to the physical altercation between Plaintiff and another inmate on November 26, 2015.  Doc. 1, ¶¶ 8-13, 19.  In Counts II and III, El-Massri alleges that all defendants subjected him to unconstitutional conditions of confinement and acted with deliberate indifference to his serious medical needs by refusing to allow him to shower to remove the sprayed chemical agent and by failing to treat the laceration under his eye.  *Id.*, ¶¶ 11-14, 21-22.  In Count IV, Plaintiff alleges that Marmora violated his Eighth Amendment rights by failing to "properly train and supervise all defendants" and to "properly investigate this matter." *Id.*, ¶¶ 15-16, 20.  The Court will analyze these claims to determine whether El-Massri has stated plausible Eighth Amendment claims against the named defendants.

## A.  NHCC - Correctional Institution as Defendant

Section 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 does not create substantive rights," but rather "provides a means to redress the deprivation of a federal right guaranteed elsewhere." *Diggs v. Town of Manchester*, 303 F. Supp. 2d 163, 182 (D. Conn. 2004).  Put simply, "[v]iolations of rights thus give rise to § 1983 actions." *Shakhnes v. Berlin*, 689 F.3d 244, 250 (2d Cir. 2012).

In the caption of his complaint, El-Massri lists the NHCC as a defendant to this § 1983 action.

However, "[n]either a Department of Correction nor a correctional institution is a 'person' within the meaning of § 1983." *Santos v. Connecticut Dep't of Corr.*, No. 3:04CV1562(JCH)(HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (gathering cases). That is because "[n]either a state nor one of its agencies . . . is a 'person' under § 1983." *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir. 1998) (citing *Hafer v. Melo*, 502 U.S. 21, 26 (1991)). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Therefore, there is no arguable legal basis for a § 1983 action against NHCC. All claims against that defendant will be dismissed.

**B.      Individual Defendants in their Official Capacities**

With respect to the named seven individual defendants, Plaintiff sues them in both their official and personal capacities. Doc. 1, ¶¶ 3-6  As to individual defendants acting in their *official* capacities, "the eleventh amendment immunity protects state officials sued for damages." *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159,169-70 (1985)) (emphasis added). *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ["[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (claims for damages against defendants in their official capacities barred by Eleventh Amendment). To the extent that Plaintiff seeks damages from state officials in their official capacity, his § 1983 claims are barred by the Eleventh Amendment and will be dismissed.[4]

---

[4] If a § 1983 suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). Under such circumstances, the action  is deemed to be against the state so that the state official is entitled to Eleventh Amendment immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). *See also, e.g.,*

However, Plaintiff also sues these individual defendants in their official capacities for declaratory and injunctive relief. In particular, El-Massri seeks a declaratory judgment that defendants violated his constitutional rights and "an injunction ordering the defendants to take [him] to an eye doctor for treatment." Doc. 1, at 15 ("Prayer for Relief," ¶¶ A.-B.). The Eleventh Amendment does not bar an action against a state official for violation of federal law if the plaintiff seeks an injunction regarding that official's future conduct. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974). *See also Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989) ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'") (quoting *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14 (1985)); *Feng Li v. Rabner,* 643 F. App'x 57, 57-59 (2d Cir. 2016) ("As to the individual defendants, generally, state officials are not immune under the Eleventh Amendment if the 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" ) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002)).

The events giving rise to Plaintiff's action occurred nearly three years ago, and El-Massri is no longer confined in NHCC, the facility where the defendants are employed. "It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility," including the officials employed therein. *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). *See also Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's

---

*Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants.") (citing *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."); *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. 1989) ("Since Young is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot."), *cert. denied*, 492 U.S. 909 (1989).

A plaintiff may overcome this bar of a moot claim if he can show that the challenged action is capable of repetition. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). "[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Id.* In this case, however, El-Massri has not alleged any facts which would support a reasonable inference that any of the alleged constitutional deprivations by defendants are capable of repetition, especially since these events occurred nearly three years ago at a facility where Plaintiff is no longer housed. The Court thus finds that Plaintiff's claims for declaratory and injunctive relief are moot.[5] These claims will be dismissed.

## C.     Individual Defendants in their Personal Capacities

With respect to claims for *damages*, the transfer to a different prison does not moot an action against state officials in their individual or personal capacities. *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996). El-Massri may, therefore, pray for damages arising under any plausible Eighth Amendment claim he may bring against the defendant officials in their personal capacities.

_____

[5] Moreover, declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). El-Massri's request for declaratory relief in this case only concerns past actions; specifically, the use of excessive force on November 26, 2015, and the deprivation of showers and medical treatment for three days thereafter. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past).

1. **Count I - Excessive Force Against Williams, Cacioli, Lewis, and Hebert and Failure to Intervene Against McGivney and Goode**

With respect to El-Massri's Eighth Amendment "excessive" force claim against Lieutenants Williams, Cacioli, and Lewis, and Officer Hebert, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). However, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins,* 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (not every push or shove violates prisoner's constitutional rights); *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) ("Hence, a *de minimis* use of force will rarely suffice to state a constitutional claim.").

To establish a claim of excessive force under the Eighth Amendment, the prisoner must satisfy a subjective and an objective component. *See Sims*, 230 F.3d at 20-21. The subjective component of the claim requires a showing that the official's use of physical force was "malicious[] and sadistic[] rather than as part of a good-faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 7). The objective component "focuses on the harm done" in light of contemporary standards of decency, "but the amount of harm that must be shown depends on the nature of the claim." *Sims*, 230 F.3d at 21. *See also Banks v. Cty. of Westchester*, 168 F. Supp.3d 682, 688 (S.D.N.Y. 2016).

Although some degree of injury ordinarily will be required, the prisoner does not have to show that he sustained a significant injury in order to prevail on an excessive force claim, *Banks*, 168 F. Supp.3d at 688; *Sims*, 230 F.3d at 22; *Wilkins*, 559 U.S. at 37. A prisoner sufficiently states an Eighth

Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically . . . ." *Sims*, 230 F.3d at 22.

El-Massri has stated a plausible "excessive force" claim against Williams, Cacioli, Lewis, and Hebert, all of whom physically harmed him on November 26, 2015. El-Massri alleges that Lewis and Cacioli sprayed "chemical agent directly into his face and eyes at close range" and that Williams and Hebert "slammed" him face-first onto the ground, causing him to sustain a superficial laceration under his right eye. Doc. 1, ¶¶ 8-10. Plaintiff alleges that the defendants took these actions after he had "complied" with their commands to "stop fighting." *Id.*, ¶ 9.

"Courts in this Circuit have repeatedly held that a prison official's use of mace or chemical spray against a compliant prisoner satisfies both the subjective and objective elements of an Eighth Amendment excessive force claim; the subjective element is satisfied in such cases because spraying a compliant prisoner with mace cannot be characterized as an attempt to maintain or restore discipline, and the objective element is satisfied where a prisoner alleges that he suffered injuries beyond the immediate discomfort that results from being sprayed with mace." *Parsons v. City of New York*, No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017) (collecting cases). Furthermore, "slamming" a prison face first to the ground may be "excessive force" after the prisoner has already complied with commands to cease fighting.

At the screening stage, construing the alleged facts liberally, interpreting them to make the strongest argument that they suggest, Plaintiff's allegations plausibly show that Williams, Cacioli, Lewis, and Hebert maliciously and sadistically caused him physical injury. Therefore, the Court will permit the Eighth Amendment "excessive force" claim to proceed against those defendants in their individual capacities for damages.

Although El-Massri does not allege that McGivney or Goode physically harmed him in any way or participated in the assault, he does allege that they responded to the altercation incident on November 26, 2015, so were present during the use of excessive force by the other defendants.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted).  Therefore, "a prison staff member who is present during an assault on an inmate by another prison staff member may be liable under section 1983 for any resulting constitutional deprivation, even if the staff member did not directly participate." *Gulley v. Iweka*, No. 3:14CV1832(MPS), 2016 WL 4370029, at *9 (D. Conn. Aug. 15, 2016) (citing *Curley v. Village of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001)).  An official may thus be liable for failing to intercede where he or she "observes excessive force is being used or has reason to know that it will be."  *Curley*, 268 F.3d at 72.

To state a claim under § 1983 for a prison official's failure to intervene where "excessive force" is being used by another officer, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene" to prevent the harm.  *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y.  2008) (citations omitted),  *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).[6]

---

[6] With regard to the first factor, "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

In the case at bar, El-Massri alleges that Officer McGivney and Nurse Goode were present at the scene when defendants Williams, Cacioli, Lewis, and Hebert maliciously and sadistically caused him physical injury, spraying him in the face with a chemical agent and slamming him face-first to the ground. The description of the alleged force implies that a reasonable person would recognize that El-Massri's constitutional rights were being violated. Neither McGivney nor Goode acted to protect Plaintiff from injury. Under these circumstances, at the pleading stage, the Court finds that Plaintiff's claim for failure to intervene under § 1983 may proceed against McGivney and Goode in their individual capacities for money damages.

### 2. Counts II and III: Unconstitutional Conditions of Confinement and Deliberate Indifference to Medical Needs Against All Individual Defendants (Marmora, Williams, Cacioli, Lewis, Hebert, McGivney, and Goode)

In Counts II and III, El-Massri claims that all defendants violated his Eighth Amendment protection against cruel and unusual punishment by (1) failing to treat the laceration below his eye, which he allegedly sustained when defendants Williams and Hebert forced him face-first to the ground on November 26, 2015; and (2) depriving him of the opportunity to shower and thus decontaminate himself (from the chemical agent sprayed in his face) for three days. Doc. 1, ¶¶ 13-14. In sum, he alleges that he was confined in unconstitutional conditions and treated with deliberate indifference to his serious medical needs.

### a. Count II: Unconstitutional Conditions of Confinement

To state an Eighth Amendment claim for unconstitutional conditions of confinement, a prisoner must allege facts demonstrating the failure of prison officials to provide for his "basic human needs – *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). A prisoner may prevail on an Eighth Amendment

claim based on unconstitutional conditions of confinement "only where he proves both an objective element – that the prison officials' transgression was 'sufficiently serious' – and a subjective element – that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

A condition is objectively serious if it "'pose[s] an unreasonable risk of serious damage to [a prisoner's] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Thus, the "objective component relates to the seriousness of the injury." *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994). To "establish an objective deprivation, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (citations and internal quotation marks omitted). "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

To meet the subjective component, the prisoner must allege that the official knew "of and disregard[ed] an excessive risk to inmate health or safety," that is, that he was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w that inference." *Phelps*, 308 F.3d at 185-86 (quoting *Farmer*, 511 U.S. at 837). The prisoner may state an Eighth Amendment claim based on allegations that the official, with deliberate indifference, exposed him to an unsafe condition that posed an unreasonable risk of serious harm to his future health. *Helling*, 509 U.S. at 35.

Here Plaintiff has alleged sufficient facts to make out an "unconstitutional conditions of confinement" claim. Specifically, he has alleged the "objective element" – that the prison officials' transgression was "'sufficiently serious," denying him from washing a harmful, burning chemical from his skin and eyes – and the "subjective element" – that the officials failed to allow him to shower, with a "sufficiently culpable" state of mind: "deliberate indifference to inmate health or safety." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Under these circumstances, El-Massri has pled a plausible unconstitutional conditions of confinement claim against the individual defendants in their personal capacities for money damages.

### b. Count III - Deliberate Indifference to Serious Medical Needs

To state a claim for deliberate indifference to a serious medical need, a prisoner must show both that his medical need was serious and that defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 492 U.S. 97, [106] (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must be "one that may produce death, degeneration, or extreme pain." *Hathaway*, 99 F.3d at 553. Subjectively, defendants must have been actually aware of a substantial risk that the prisoner would suffer serious harm as a result of their actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 280-81 (2d Cir. 2006).

In the present case, El-Massri contends that for three days following the altercation on November 26, 2015, prison officials at NHCC deprived him of medical treatment for his laceration under his eye and a shower to decontaminate himself from the chemical agent. Doc. 1, ¶¶ 13-14.

Plaintiff alleges:

> For three days and three nights the Plaintiff was forced to burn in chemical agent. Each day and night he asked all officers and nurses he came into contact with to allow him to decontaminate but he was unreasonably denied. Moreover[,] the Plaintiff did not recieve [sic] any treatment for the laceration he sustained under his right eye.
>
> All defendants knowingly, and intentionally subjected, and allowed the Plaintiff to continuously be subjected to conditions of confinement to which he was denied an ample opportunity to decontamination.

Doc. 1, ¶¶ 13-14.

### 1. "Superficial Laceration" under Right Eye

With respect to Plaintiff's alleged laceration under his eye, absent factual allegations to establish that it was objectively "serious," such an injury does not rise to the level of "a condition of urgency that may produce death, degeneration or extreme pain." *Dallio v. Hebert*, 678 F. Supp. 2d 35, 44 (N.D.N.Y. 2009) (prisoner's cuts and bruises failed to constitute sufficiently serious medical need). *See, e.g., Dawes v. Coughlin,* 159 F.3d 1346 (2d Cir. 1998) ("[E]ven taking [Plaintiff's] testimony as true, a reasonable finder of fact could not conclude that [Plaintiff's] claimed injury, a one-and-a-half-inch laceration on his elbow, was sufficiently serious to give rise to an Eighth Amendment claim.") (Table); *Jordan v. Masterson*, No. 3:10-CV-1293 (JCH), 2012 WL 1340796, at *3 (D. Conn. Apr. 18, 2012) (prisoners' "two scalp lacerations, each one centimeter in length," combined with other reported injuries, failed to constitute serious medical needs); *Young v. Choinski*, 15 F. Supp. 3d 172, 183 (D. Conn. 2014) (cuts and abrasions on plaintiff's arms failed to constitute a "serious medical need" where he failed to allege that they "significantly interfered with his daily activities or caused him substantial or chronic pain"); *Tafari v. McCarthy*, 714 F. Supp. 2d 317, 354 (N.D.N.Y. 2010) (*Pro se* prisoner "[p]laintiff's superficial injuries [were] not significant enough to

satisfy the objective element" of his Eighth Amendment medical claim where "Plaintiff had two bruises and a superficial laceration on his body."); *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y.2001) ("[A] cut finger, even where skin is 'ripped off,' . . . does not, as a matter of law, qualify as an injury severe enough to justify civil rights relief."); *Montavon v. Town of Southington*, No. 95-CV-1141, 1997 WL 835053, at *4 (D. Conn. Sept. 29, 1997) (plaintiff's cuts and scrapes, unaccompanied by profuse bleeding or other conditions, did not constitute a medical condition that was sufficiently serious for purposes of Fourteenth Amendment); *Ford v. Phillips*, No. 05 Civ. 6646(NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("[a]brasions, a minor bruise, slight bleeding and scratches are not injuries that may produce death, degeneration or extreme pain," and were thus not sufficiently serious); *Benitez v. Straley*, No. 01-CV-0181, 2006 WL 5400078, at *3, 4, 12, (S.D.N.Y. Feb. 16, 2006) (where Plaintiff had cut on his lips, cut on his head, and "severe cuts" to his wrists – none of which required stitches – his injuries did not constitute a medical condition that was sufficiently serious for purposes of Eighth Amendment); *Hickey v. City of New York*, No. 01-CV-6506, 2004 WL 2724079, at *16 (S.D.N.Y. Nov. 29, 2004) (cuts and bruises do not constitute sufficiently serious medical needs); *Sanford v. Hayden*, No. 92-CV-7629, 1994 U.S. Dist. LEXIS 21265, at *3, 21 (S.D.N.Y. Aug. 29, 1994) (cuts, bruises, and abrasions, which were not immediately cleaned, cap for tooth, which was not replaced, and blurred vision and headaches due to fact that glasses were not replaced, did not constitute a medical condition that was sufficiently serious for purposes of either Eighth or Fourteenth Amendment). *See also Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir.1991) (a scraped elbow and a one-inch cut to an arrestee's temple, neither deep enough nor long enough to require stitches, were not sufficiently "serious" to require prompt medical attention under the Eighth Amendment), *reh'g denied*, 946 F.2d 538 (7th Cir.

1991); *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir. 1990) (inmate's swollen, bleeding wrists from handcuffs that were too tight do not constitute a serious medical need).

In the case at bar, El-Massri alleges only that he "sustained a superficial laceration under his right eye." Doc. 1, ¶ 10. By definition, a cut that is "superficial" is one that is not deep and/or likely to need of stitches.[7] Such a cut is not an injury that would create a sense of urgency or produce death, degeneration or extreme pain. Absent additional allegations of infection, profuse bleeding, and/or other complications, a "superficial" cut does not rise to the level of a "serious medical need." Because Plaintiff has failed to establish that his laceration constituted a medical need that was objectively "serious", his "deliberate indifference" claim as to that laceration will be dismissed.

In the same vein, his untreated laceration also fails to rise to the level of creating an unconstitutional condition of confinement. Even liberally construing the complaint and Plaintiff's allegations, Plaintiff has not raised a triable issue of fact as to the objective element of his Eighth Amendment medical and confinement claims with respect to his "superficial laceration."

## 2. Chemical Contamination

The Court next examines Plaintiff's claim that the defendants failed to allow him to shower to remove a chemical contaminant. Plaintiff alleges that officers Lewis and Cacioli sprayed him directly in the face after he "complied" with the officers's commands to "stop fighting." Doc. 1, ¶ 9.

---

[7] *See, e.g*, Duhaime, Lloyd & Naysmith, David, *Medical-Legal Dictionary*, http://www.duhaime.org/LegalDictionary/Category/MedicalLegalDictionary.aspx (accessed 9/10/2018) (A "superficial wound" is "[a] scrape, bruise, discoloration, or swelling, of *minimal severity*.") (emphasis added); Weill Cornell Medical College, Department of Surgery, "What are the Different Types of Superficial Wounds?", http://woundcarecenternyc.com/wound-care-center-nyc-what-are-the-different-types-of-superficial-wounds/ (published 2018) (accessed 9/10/2018) ("A superficial laceration is a minor cut or tear in the top layer of the skin. These wounds tend to bleed minimally and they heal fast for those in generally good health.").

He also states that "[f]or three days and three nights [he] was forced to burn in chemical agent." *Id.* ¶ 13.

A prisoner plaintiff states a plausible claim against officers for deliberate indifference to serious medical needs if he "alleges that the officers sprayed [him] with mace, which caused Plaintiff's eyes, face and skin to burn, and subsequently denied him any medical treatment . . . ." *Parsons v. City of New York,* No. 17-CV-2707 (MKB), 2017 WL 2656135, at *3 (E.D.N.Y. June 19, 2017*).*

As set forth *supra,* in order to establish a claim for deliberate indifference to serious medical needs, a prisoner must show that (1) he had objectively "serious medical needs," and (2) this condition was met with subjective "deliberate indifference" by the defendants. *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (quoting *Estelle*, 429 U.S. at 104). To prove the subjective component, the plaintiff must show that the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "The objective component requires that the alleged deprivation [of medical treatment] must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Id.* (citation and internal quotation marks omitted).

El-Massri's allegations regarding the chemical agent satisfy the subjective element of his "deliberate indifference" claim because they assert that "[a]ll defendants knowingly and intentionally subjected . . . the Plaintiff to . . . conditions of confinement" in which he was covered in a chemical agent and, despite Plaintiff's requests to decontaminate, none took action remedy the situation. Doc. 1, ¶ 14. In other words, the defendants were aware of a substantial risk of serious harm to the Plaintiff

but failed to provide access to a shower.[8] *See, e.g., Al-Bukhari v. Semple*, No. 3:16-CV-1428 (SRU), 2017 WL 2125746, at *4 (D. Conn. May 16, 2017) (prisoner stated Eighth Amendment claim for deliberate indifference to serious medical needs by "alleg[ing] that he informed the correctional officers and nurses that he was suffering from extreme pain as a result of being sprayed with a chemical agent and the staff repeatedly denied his requests for an adequate shower to clean himself and decontaminate the agent."); *West v. City of New York*, No. 13 CIV. 5155 (PAE), 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (finding that a prisoner stated an Eighth Amendment claim for deliberate indifference to serious medical needs because after a correction officer sprayed him with mace, "she and other corrections officers left him in the shower for approximately two hours" while he coughed and "his skin was burning").

El-Massri's allegations that a chemical agent "burned" him for three days satisfies the objective element that he suffered from serious medical needs. "Injuries or pain resulting from being sprayed with mace sufficiently establish the existence of a serious medical need deserving of medical attention." *Parsons*, 2017 WL 2656135, at *4. *See also, e.g.*, *West,* 2014 WL 4290813, at *5 (prisoner established existence of a "serious medical need" because he was sprayed with mace, resulting in "difficulty breathing, severe itching and burning, and skin discoloration"); *Ramos v. Quiros*, No. 3:11-CV-1616 (RNC), 2012 WL 4501673, at *2-3, 6 (D. Conn. Sept. 27, 2012) (prisoner established the existence of a "serious medical need" where he alleged he was sprayed with mace and subsequently denied medical treatment); *Santos v. N.Y.C. Dep't of Correction*, No. 08 Civ. 8790

---

[8] As to which defendants were actually aware of his condition (being covered in chemical agents) and his requests to decontaminate, Plaintiff will be left to his proof. At the pleading stage, the Court must construe the facts liberally in his favor. Factual disputes do not factor into a plausibility analysis for purposes of a § 1915A review.

(GBD) (THK), 2010 WL 1142066, at *10-11 (S.D.N.Y. Feb. 25, 2010) (prisoner established a "serious medical need" where he was sprayed in the face with a fire extinguisher, causing pain in his face and left eye). Accordingly, with respect to defendants' failure to decontaminate the chemical agent sprayed upon him, Plaintiff has stated a plausible claim for deliberate indifference to serious medical needs.

### 3.  Count IV - Failure to Supervise or Train Against Marmora

In addition, El-Massri brings an Eighth Amendment claim against Deputy Warden Marmora under a theory of supervisory liability.  *See* Doc. 1, Count IV (¶¶ 15-16).  A plaintiff who sues a supervisory official in his individual capacity for monetary damages under section 1983 must allege that the official was "personally involved" in the constitutional deprivation in one of five ways:  (1) the official directly participated in the deprivation; (2) the official learned about the deprivation through a report or appeal and failed to remedy the wrong; (3) the official created or perpetuated a policy or custom under which unconstitutional practices occurred; (4) the official was grossly negligent in managing subordinates who caused the unlawful condition or event; or (5) the official "demonstrate[d] gross negligence or deliberate indifference to the constitutional rights of [the] inmate[] by failing to act on information indicating that unconstitutional practices [we]re taking place."  *Wright v. Smith*,  21 F.3d 496, 501 (2d Cir. 1994).  *See also  Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (same).

In the present case, El-Massri alleges that Marmora knew of his altercation on November 26, 2015, and the force used to end it.  He alleges that Marmora wrote a report after the incident, stating that the use of force against El-Massri was justified.  Doc. 1, ¶ 15.  Such a report, condoning the force used, may be construed as suggesting that Marmora was deliberately indifferent to the Plaintiff's

constitutional rights. Rather than criticizing the officers' violent conduct, she wrote that she "approved [of] the conduct[,] as well as the use of force." *Id.* Plaintiff also suggests that it was Marmora's training of the other defendants that led to his subjection to constitutional deprivations, including excessive force and the spraying of chemical agents. *Id.*, ¶ 16. In other words, Marmora either perpetuated or created "a policy or custom under which unconstitutional practices occurred," *Wright*, 21 F.3d at 501, and was aware that this policy was used against him.

Analyzing the alleged facts regarding Marmora, accepting the veracity of Plaintiff's factual allegations and interpreting them in his favor, the Court finds that Plaintiff states a plausible § 1983 Eighth Amendment claim against Marmora based on supervisory liability. Plaintiff has alleged that Marmora learned of the alleged constitutional violations and failed to remedy them, condoned of a policy or custom of excessive force through the use of chemical agents, and/or supervised her subordinates in such a fashion that they caused Plaintiff's alleged unlawful conditions. Accordingly, Plaintiff's § 1983 claim against Marmora for damages may proceed at this time. He will be left to his proof as to the elements of this claim.[9]

## V. <u>CONCLUSION AND ORDER</u>

Pursuant to 28 U. S. C. § 1915A, the Court has reviewed the pro se prisoner's civil complaint to determine which, if any, claims must be dismissed for failure to state claims upon which relief may

---

[9] To succeed on his claim, Plaintiff will be required to prove Marmora's "personal involvement" in the alleged constitutional deprivations as a prerequisite to an award of damages under § 1983. *See, e.g, Al-Bukhari v. Semple,* No. 3:16-CV-1428 (SRU), 2017 WL 2125746, at *3 (D. Conn. May 16, 2017) (although Plaintiff sufficiently alleged an Eighth Amendment claim for injunctive relief against the Commissioner and two prison wardens (in their official capacities) based on an ongoing unconstitutional policy of using chemical agents against inmates, he failed to state a claim against them in their individual capacities for damages because "none of these three defendants were allegedly involved in or knew about the specific incidents about which [he] complain[ed].").

be granted and/or attempts to obtain monetary relief against a defendant who is immune from such relief. Based on the foregoing, the Court sets forth its conclusion and Orders.

(1) The Court DISMISSES all claims against defendant NHCC. A correctional institution is not a "person" within the meaning of 42 U.S.C. § 1983 so there is no arguable legal basis for proceeding with a § 1983 claim against NHCC. The Clerk is directed to terminate this defendant.

(2) All claims against the remaining defendants in their *official* capacities are DISMISSED. The claims against these defendants in their *official* capacities for money damages are barred by the Eleventh Amendment. Furthermore, the claims against them in their *official* capacities for declaratory and injunctive relief fail to state plausible claims in that these claims fail to seek prospective relief. The events underlying El-Massri's actions occurred three years ago and he was transferred from NHCC to another location. A prisoner's transfer to a different correctional facility moots his request for declaratory and injunctive relief against employees of the transferor facility. Accordingly, his claims for declaratory and injunctive relief are DISMISSED.

(3) The following plausible claims against the individual defendants in their *personal* capacities for damages may proceed:

      A.      Excessive force against Williams, Cacioli, Lewis, and Hebert;

      B.      Unconstitutional conditions of confinement against all individual defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) regarding failure to allow Plaintiff to shower (to remove the chemical agent) for three days;

      C.      Deliberate indifference to serious medical needs against all

individual defendants, as listed above, for failure to allow

Plaintiff to decontaminate himself (*i.e.*, shower to remove the

chemical sprayed upon him); and

      D.     Failure to supervise or train against Deputy Warden Marmora.

(4) Plaintiff's claim for deliberate indifference to his alleged medical need for treatment of a "superficial laceration" below his right eye is DISMISSED.

(5) The Clerk shall verify the current work addresses for Marmora, Cacioli, Lewis, Williams, Hebert, McGivney, and Goode with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to each defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(6) The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Federal Rules of Civil Procedure 26 to 37 shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(8)  All motions for summary judgment shall be filed within **seven months (210  days)** fromthe date of this Order.

The foregoing is So Ordered.

Dated: New Haven, Connecticut
        September 25, 2018

/s/Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
Senior United States District Judge