ANDREW EL-MASSRI,

               Plaintiff,

  v.

NEW HAVEN CORRECTIONAL
CENTER, DEPUTY WARDEN
MARMORA, LIEUTENANT
CACIOLI, LIEUTENANT LEWIS,
LIEUTENANT WILLIAMS,
OFFICER HEBERT, OFFICER
McGIVNEY, NURSE GOODE,

               Defendants.

Civil Action No.
No. 3:18-cv-1249 (CSH)

JULY 31, 2019

## OMNIBUS RULING ON PENDING MOTIONS [Doc. 39, 41, 42, and 49]

**Haight, Senior District Judge:**

## I.  INTRODUCTION

*Pro se* plaintiff, Andrew El-Massri, an inmate currently incarcerated at the Garner

Correctional Institution  in Newtown, Connecticut, has filed a civil rights complaint pursuant to 42

U.S.C. § 1983 against the New Haven Correctional Center ("NHCC"), where he was previously

detained, and seven of the facility's employees in their individual and official capacities:  Deputy

Warden Marmora, Lieutenant Cacioli, Lieutenant Lewis, Lieutenant Williams, Officer Hebert,

Officer McGivney, and Nurse Goode (herein collectively "Defendants").  El-Massri has attempted

to sue the Defendants for violating his Eighth Amendment protection against cruel and unusual

punishment and seeks monetary, injunctive, and declaratory relief.  Doc. 1 (Complaint), at 8-9.  After

initial review, and based on the Plaintiff's statements that he was a "prisoner" during the events at issue, the Court dismissed the claims against NHCC but permitted El-Massri's Eighth Amendment claims against the individual Defendants to proceed for excessive force, failure to intervene against excessive force, deliberate indifference to medical needs, and unconstitutional conditions of confinement. *See* Doc. 9 ("Initial Review Order"), at 23. The Defendants answered the complaint on November 27, 2018. Doc. 14 ("Answer"). El-Massri has filed the following motions, which are currently pending before the Court: Motion Requesting More Sufficient Responses to Requests for Admissions [Doc. 39], Motion to Appoint an Expert Witness [Doc. 41], Motion to Amend the Complaint [Doc. 42], and Motion to Appoint Counsel [Doc. 49]. The Court resolves the motions herein.

## II. DISCUSSION

### A. Motion for More Sufficient Responses to Requests for Admissions [Doc. 39]

El-Massri has filed a motion pursuant to Federal Rule of Civil Procedure 36 requesting that the Court direct Defendant Cacioli to provide more sufficient responses to Plaintiff's requests for admissions. El-Massri contends that Cacioli is "attempting to avoid responding to [his] request[s] . . . in bad faith." Doc. 39, ¶ 4.

On May 3, 2019, Cacioli gave the following responses to El-Massri's Requested Admissions:

1.    Admit or deny the authenticity or genuineness of Exhibits E-1, [E-2], [and E-3].
           **ANSWER/RESPONSE: Neither Admit nor Deny. I cannot verify the authenticity of a document you submitted.**

2.    Admit or deny the authenticity or genuineness of [the] signature being yours on . . . Exhibits E-1 [and E-2].

           **ANSWER/RESPONSE: Neither Admit nor Deny. I cannot**

**verify the authenticity of a document you submitted.**

3.     Admit or deny that you were trained and aware of facts and directives in Exhibit E-3.

**ANSWER/RESPONSE:   Neither Admit nor Deny.   I cannot verify the authenticity of a document you submitted.**

Doc. 39-1.   Exhibit E-1 is a document entitled "Supervisor Video Recording Review" dated November 26, 2015, which appears to be signed by Cacioli.   Doc. 39-2 (Exhibit E-1), at 4.   Exhibit E-2 consists of two "Use of Force Report[s]" dated November 26, 2015, one of which also appears to be signed by Cacioli.   Doc. 39-2 (Exhibit E-2), at 5-6.   Exhibit E-3 is a copy of Department of Correction ("DOC") Administrative Directive 6.9 which governs the "Collection and Retention of Contraband and Physical Evidence."[1]   Doc. 39-3.

In support of his motion, El-Massri contends that Cacioli can admit or deny:  the genuineness of a document under Rule 36(a)(2), whether the signature on Exhibits 1 and 2 is his signature, and whether he was trained in the policies and procedures outlined in DOC Administrative Directive 6.9. Cacioli has not responded to the motion.

### *1.  Standard of Review for Requests for Admissions*

Federal Rule of Civil Procedure 36(a)(1)(B) authorizes a party to "serve on any other party a written request to admit . . . the truth of any matters [falling within the proper scope of discovery]

---

[1]     The DOC Administrative Directives can also be found on the DOC website at https://portal.ct.gov/DOC/Common-Elements/Common-Elements/Directives-and-Polices-Links. The Court takes judicial notice of the Administrative Directives. *See Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7, n.2 (D. Conn. Sept. 19, 2003) (citation omitted) (taking judicial notice of the Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities"); *Chambers v. Johnpierre*, No. 3:14-CV-1802 (VAB), 2016 WL 5745083, at *3 n.4 (D. Conn. Sept. 30, 2016) (same).

. . . relating to . . . the genuineness of any described documents."   The party who requests the admission "bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without explanation, and in certain instances, permit a qualification or explanation for purposes for clarification." *Dash v. Seagate Technology (US) Holdings, Inc.*, No. CV-13-6329 (LDW) (AKT), 2015 WL 4257329, at *16 (E.D.N.Y. July 14, 2015) (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 77 (N.D.N.Y. 2003)).   Moreover, "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4).

Requests for admissions are not discovery tools in the traditional sense.  *Brodeur v. McNamee*, No. 3:02-CV-823 (NAM/DEP), 2005 WL 1774033, at *2 (N.D.N.Y. July 27, 2005). "While discovery mechanisms such as requests for document production, interrogatories, and depositions typically seek to uncover information for use in pursuing or defending against a litigated claim, requests for admissions serve the distinctly different purpose of assisting the parties and the court to narrow the factual issues to be presented for determination in connection with such a claim, either on motion or at trial." *Id.* "Provided the demand is understandable and straightforward, calls for relevant information, and does not violate a recognized privilege, an objection to a request to admit is improper." *Woodward v. Holtzman*, 329 F.R.D. 16, 26 (W.D.N.Y. 2018) (quoting *Booth Oil Site Administrative Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 80 (W.D.N.Y. 2000)).

Rule 36(a)(6) permits the requesting party, in this case El-Massri, to move for a determination of the sufficiency of an answer or objection to a request for an admission.  "Unless the court finds an objection justified, it must order that an answer be served.  On finding that an

answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  "When assessing the sufficiency of a party's responses, a court considers whether the response meets the substance of the request and whether any qualifications are demanded by, and made in, good faith."  *Wiwa v. Royal Dutch Petroleum Co.*, No. 96-CIV-8386 (KMW) (HBP), 2009 WL 1457142, at *5 (S.D.N.Y. May 26, 2009).  "On a Rule 36(a)(6) motion, '[t]he burden is on the objecting party to persuade the court that there is a justification for the objection.'"  *Freydl v. Meringolo*, No. 09-CIV-07196 (BSJ) (KNF), 2011 WL 2566079, at *2 (S.D.N.Y. June 16, 2011) (quoting 8B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2263 (3d ed. 2010)).

### 2.  *Analysis*

Absent objection to the motion by Cacioli and/or an explanation for his refusal to respond, the Court agrees that Cacioli has the ability to admit or deny the authenticity of the "Supervisor Video Recording Review" [E-1]and the first of the two "Use of Force Reports" [E-2], both of which list his name at the bottom as the DOC employee who reviewed and/or prepared the documents.  *See* Doc. 39-2, at 4-5.  Cacioli has not explained why he cannot authenticate these documents by comparing them to those on file with the DOC or through some other means, nor has he explained why he cannot indicate whether the signature next to his name at the bottom of each document is, in fact, his signature.  Thus, the Court will direct Cacioli to file an amended response to Requests for Admissions 1 and 2.[2]

Unlike the first two requests, Request Number 3 does not call upon Cacioli to admit or deny

---

[2] El-Massri's Exhibit E-2 also appears to include a second "Use of Force Report" signed by defendant Williams.  *See* Doc. 39-2, at 6.  Defendant Cacioli need not file a response as to whether the signature next to defendant Williams's name is his signature.

5

the genuineness of a document but rather seeks the discovery of information. Nevertheless, it is not necessary that Cacioli respond to this request as it is already established, and the Court takes judicial notice, that all DOC employees are trained on Chapter 6 of the Administrative Directives. *See* DOC Admin. Dir. 1.3, § 24 ("Training"). Therefore, to the extent El-Massri seeks an order for a more sufficient response to Request Number 3, his motion is DENIED.

**B.     Motion Requesting Court to Appoint an Expert Witness [Doc. 41]**

El-Massri has filed a motion requesting the Court to appoint a medical expert, specializing in dermatology, to testify about the effects of using chemical mace on an individual without proper decontamination. He contends that he is unable to pay the fees of such an expert witness and that the Court should do so because it previously granted him permission to proceed *in forma pauperis* under 28 U.S.C. § 1915. El-Massri misconstrues the scope of *in forma pauperis* status.

Although being granted *in forma pauperis* status under 28 U.S.C. § 1915 permits El-Massri to proceed with his case without prepayment of filing fees and the responsibility to effect service on the defendants, it "does not authorize payment or advancement of discovery expenses by the [C]ourt." *Goode v. Faneuff*, No. 3:04-CV-1524 (WWE) (HBF), 2006 WL 2401593, at *1 (D. Conn. Aug. 18, 2006). The Court has no authority to finance El-Massri's discovery expenses, including the costs of hiring an expert witness, despite granting him permission to proceed *in forma pauperis*. *Id.*; *see also Candelaria v. Coughlin*, 133 F.3d 906 (2d Cir. 1997) (affirming district court's denial of plaintiff's request to "present expert medical testimony at the government's expense" because "this Court has established that 'federal courts are not authorized to waive or pay witness fees on behalf of an in forma pauperis litigant'") (quoting *Malik v. Lavalley*, 994 F.2d 90 (2d Cir.1993)); *Benitez v. Choinski*, No. 3:05-CV-633 (JCH) (HBF), 2006 WL 276975, at *2 (D. Conn. Feb. 2, 2006)

(holding 28 U.S.C. § 1915 does not authorize Court to pay for plaintiff's medical examination). El-Massri is responsible for his own discovery expenses, and therefore, his motion for the Court to appoint and finance an expert witness is DENIED.

**C.  Motion for Leave to Amend Complaint [Doc. 42]**

This Court denied El-Massri's first motion for leave to amend his complaint [Doc. 28] because, *inter alia*, he failed to submit a proper memorandum of law in support of the motion and a proposed amended complaint, in accordance with Federal Rule of Civil Procedure 15 and District of Connecticut Local Civil Rule 7(f).  *See* Doc. 33 ("Ruling on Plaintiff's Motion to Amend Complaint"), at 4-6.  In so ruling, the Court instructed El-Massri to re-file his motion with the required attachments no later than June 7, 2019.  *Id.,* at 6, 12.  The Court specifically stated that the proposed amended complaint "must state all allegations and claims [El-Massri] wishes to pursue in this action, including those which the Court found plausible in its Initial Review Order ("IRO"), and any additional claims and/or defendants he seeks to add."  *Id.,* at 12.

On May 24, 2019, El-Massri filed his second motion for leave to amend his complaint with a supporting memorandum of law and a proposed amended complaint.  The proposed amended complaint seeks to:  (1) add allegations and new claims against the existing defendants and (2) add five new defendants to the action:  Warden Jose Feliciano, Deputy Warden John Doe (name unknown), Officer Mazzonna, Officer Corley, and Officer Harris.  Doc. 42, at 5-11, 14-25.  The Defendants have objected to El-Massri's motion on the grounds that any amendment to the complaint would run afoul of the three-year statute of limitations, and the newly added defendants will be prejudiced by the untimely amendment because they were not on notice that they could have been brought in as defendants to this action.  Doc. 48 ("Defendant's Objection").  For the following

reasons, the Court will GRANT in part and DENY in part the motion to amend.

### 1. Standard for Leave to Amend - Rule 15, Fed. R. Civ. P., and Foman

Pursuant to Rule 15(a), Fed. R. Civ. P., a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading (*i.e.*, answer or motion to dismiss) or of a Rule 12(b), (e), or (f) motion, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1)(A) and (B). *See also, e.g., Baines v. Pillai,* No. 3:16-CV-01374 (CSH), 2017 WL 1375168, at *1 (D. Conn. Apr. 10, 2017)*; Taurus B, LLC v. Esserman,* No. 3:14-CV-715 CSH, 2014 WL 4494398, at *1 (D. Conn. Sept. 12, 2014).

In all other cases, the plaintiff may amend his complaint only with "the opposing party's written consent or the court's leave," which should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. – the leave should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962) (discussing Rule 15(a)). "This relaxed standard applies with particular force to *pro se* litigants." *Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999).

In determining what constitutes prejudice, the Court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "The longer the period of unexplained delay, the less will be required of the non-

moving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

## 2.    *Standard for Reviewing Prisoner Civil Complaints Under 28 U.S.C. § 1915A*

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2).  Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.  When "well-pleaded factual allegations" are present, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

---

[3] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*.  *See, e.g., Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018); *Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018); *Bd.-Tech Elec. Co. v. Eaton Corp.*, 737 F. App'x 556, 558 (2d Cir. 2018); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).

*Id.* at 679. Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted)). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007);

(In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally "to raise the strongest arguments [they] suggest[].") (quoting *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 146 (2d Cir. 2002)).

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

### 3. *Amendments to Existing Claims*

In the case at bar, applying the *Foman* standard, there does not appear to be any undue delay, bad faith, or dilatory motive on El-Massri's part. As a *pro se* litigant, he filed a procedurally deficient motion to amend and has now refiled it per the Court's instructions [Doc. 37]. Consequently, the Court will focus on futility of amendment – whether Plaintiff has stated any plausible claim – and undue prejudice that may arise should leave to amend be granted.

El-Massri's claims in this case are based on the Defendants' use of physical force against him on November 26, 2015, at the New Haven Correctional Center ("NHCC"), following an altercation he had with another inmate, and the conditions to which he was subjected at NHCC in the three days following the incident. *See* Doc. 9. The Court permitted the following Eighth Amendment claims to proceed under section 1983 against the Defendants presently in the case: (1) excessive force against Williams, Cacioli, Lewis, and Hebert (as well as failure to intervene to prevent such force against McGivney and Goode), Doc.9, at 10-13; (2) unconstitutional conditions of confinement

against all Defendants for their failure to permit El-Massri to shower for three days following the incident, *id.*, at 13-15; (3) deliberate indifference to serious medical needs against all individual Defendants for their failure to permit El-Massri to shower (during the aforementioned three days), *id.*, at 15-21; and (4) failure to properly supervise or train subordinate officials against Deputy Warden Marmora, *id.*, at 21-22.

With respect to the existing claims, the Court previously reviewed El-Massri's excessive force, conditions of confinement, deliberate indifference to medical needs, and failure to supervise claims under the standard established by the Eighth Amendment's "cruel and unusual punishment" clause. *See* Doc. 9, at 9-14. That was because in his initial Complaint, El-Massri had identified himself as "a state prisoner," Doc. 1. at 2, but failed to indicate the particular sentence he was serving at the time of the alleged constitutional deprivations, Doc. 9, at 1 n.1.

In his proposed amended complaint, however, El-Massri now asserts that he was a pretrial *detainee*, and *not a prisoner*, at the time of the alleged violations. Doc. 42, at 14 ("At the time of the incident, on November 26, 2015, Plaintiff was an unsentenced pre-trial detainee housed in [the] New Haven Correctional Center." ). State judicial records show two prior convictions for El-Massri: one from December 20, 2010, which resulted in a six-month prison sentence, and another from January 30, 2019, which resulted in a one-year prison sentence. *See* Doc. 9, at 1 n.1; Doc. 33, at 1 n.1; *State v. El-Massri*, No. U04W-CR10-0395487-S (Conn. Super. Ct. Dec. 20, 2010); *State v. El-Massri*, No. H15N-CR18-0068824-T (Conn. Super. Ct. Jan. 30, 2019).

In the past, the Second Circuit applied the same two-prong standard in analyzing claims such as deliberate indifference, under the Eighth and Fourteenth Amendments. However, in response to the United States Supreme Court's decision in *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2470

(2015), the Second Circuit altered the standard as to the subjective prong in *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). In *Kingsley*, the Supreme Court held that "an objective standard [of intent] is appropriate in the context of excessive force claims brought by pretrial detainees pursuant to the Fourteenth Amendment." *Id.*, at 2476.

Consequently, following *Kingsley*, the Second Circuit stated in *Darnell* that "to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, [a] pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." 849 F.3d at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') of a deliberate indifference claim is defined objectively." *Id.*

Furthermore, although *Darnell* dealt with a claim of deliberate indifference to unconstitutional conditions of confinement, a footnote in the decision made clear that "deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment." *Id.* at 33, n.9. District courts in the Second Circuit have thus applied the objective *mens rea* prong to excessive force and deliberate indifference claims under the Fourteenth Amendment. *See, e.g., Walker v. Wright*, No. 3:17-CV-425 (JCH), 20018 WL 4516672, at *5 (D. Conn. May 15, 2018) (collecting cases); *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *5 (D. Conn. Sept. 25, 2018).

Because the record now reflects that El-Massri was a pretrial detainee at the time of the alleged constitutional violations in this case, and not "a state prisoner," his claims must be analyzed

under the Fourteenth Amendment's Due Process Clause as opposed to the Eighth Amendment's "cruel and unusual punishment" clause. *See Darnell*, 849 F.3d at 29 (detainee's challenge to conditions of confinement governed by Fourteenth Amendment Due Process Clause because detainee has not been convicted of any crime and, therefore, "may not be punished in any manner – neither cruelly and unusually nor otherwise") (citing *Iqbal v. Hasty*, 490 F.ed 143, 168 (2d Cir. 2007). Thus, the Court hereby retrospectively revises its IRO to encompass the Fourteenth Amendment standards applicable to each claim.

As described *supra* , the burden to prove "excessive force" under the Fourteenth Amendment is recognized as lighter than that of a convicted prisoner who brings a claim under the Eighth Amendment. *Cruz v. Corizon Health Inc.*, No. 3:13-CV-2563 (CS), 2016 WL 4535040, at *3 n.7 (S.D.N.Y. Aug. 29, 2016) (noting that "[t]he Supreme Court in *Kingsley v. Hendrickson* held that a pretrial detainee alleging excessive force under the Fourteenth Amendment was subject to a lighter burden than a convicted prisoner alleging excessive force under the Eighth Amendment"). In order to state an excessive force claim under the Fourteenth Amendment, the detainee "'must show only that the force purposely or knowingly used against him was objectively unreasonable.'" *Fletcher v. City of New London*, No. 3:16-CV-241 (MPS), 2018 WL 4604306, at *10 (D. Conn. Sept. 25, 2018) (quoting *Kingsley*, 135 S. Ct. at 2473). "'[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 135 S. Ct. at 2473 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).[4]

In *Kingsley*, the United States Supreme Court identified several relevant factors a district

---

[4] In an Eighth Amendment claim for "excessive force," the prisoner must also show that the official's use of force was malicious and sadistic, rather than the result of a good faith effort to maintain or restore discipline. *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010).

court may consider in determining the reasonableness or unreasonableness of the force used:

> the relationship between the need for the use of force and the amount
> of force used; the extent of the plaintiff's injury; any effort made by
> the officer to temper or to limit the amount of force; the severity of
> the security problem at issue; the threat reasonably perceived by the
> officer; and whether the plaintiff was actively resisting.

135 S. Ct. at 2473 (citing *Graham*, 490 U.S. at 396). The Court "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with 20/20 vision of hindsight." *Id.* Moreover, a court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540 (1979)).

Next, with respect to a "plausible conditions of confinement" or "deliberate indifference to medical needs" claim under the Fourteenth Amendment, such a claim is analyzed under both an objective and subjective component. *Rogers v. Faucher*, No. 3:18-CV-1809 (JCH), 2019 WL 1083690, at *4 (D. Conn. Mar. 7, 2019); *Garcia v. University of Connecticut Health Care Center*, No. 3:16-CV-852 (JCH), 2018 WL 5830840, at *9 (D. Conn. Nov. 7, 2018). However, the subjective component is less stringent, as stated in *Darnell*.

Objectively, the detainee must allege facts showing that the challenged conditions or deprivation of care was "'sufficiently serious' – that is they 'pose[d] an unreasonable risk of serious damage to his health.'" *Rogers*, 2019 WL 1083690, at *4 (quoting *Sadowski v. Dyer*, No. 3:18-CV-1074 (KAD), 2018 WL 4854626, at *4 (D. Conn. Oct. 5, 2018)). *See also Darnell*, 849 F.3d at 30 (to prove Fourteenth Amendment violation, detainee "must show that the conditions, either alone

or in combination, pose an unreasonable risk of serious damage to his health"); *Garcia*, 2018 WL 5830840, at *9 ("To establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee must [show] . . . an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute a constitutional deprivation.").

However, as described *supra*, with respect to the subjective component, the standard for "deliberate indifference" differs from that in Eighth Amendment cases. Specifically, "[t]he legal standards for the subjective prong are different for convicted prisoners and pretrial detainees." *Rogers*, 2019 WL 1083690, at *4. Under the Eighth Amendment, a convicted prisoner must allege that "a defendant 'has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'" *Id.* (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996). "[P]ursuant to the Fourteenth Amendment, [however,] a pretrial detainee need only allege that 'the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.'" *Id.* (quoting *Darnell*, 849 F.3d at 35). Therefore, with respect to the subjective prong, El-Massri's burden of proof under the Fourteenth Amendment is less stringent than that required to establish an Eighth Amendment claim.

In light of the Court's prior extended analyses of Plaintiff's claims in the IRO [Doc. 9], which resulted in permission for his excessive force, conditions of confinement, deliberate indifference to medical needs, and failure to supervise claims to proceed (based on the Eighth Amendment standard), the Court will permit those same claims to proceed under the less stringent Fourteenth

16

Amendment. Those claims were interpreted as plausible per *Iqbal* under the more stringent standard of the Eighth Amendment, and so may proceed under the Fourteenth Amendment.

### 4.  *New Allegations and Claims Against Existing Defendants*

In his proposed amended complaint, El-Massri seeks to add allegations of damages, stating that the Defendants' use of chemical mace on November 26, 2015, resulted in "an extremely irritating and painful skin disorder" from which he continues to suffer. Doc. 42, at 22. He also seeks to add a state law claim of assault against Cacioli, Lewis, Williams, and Hebert, and a claim that the Defendants violated DOC Administrative Directive 2.17, § 5(A)(2), which requires all DOC employees to "[c]omply with all federal and state statutes and regulations, administrative and unit directives, department and unit policies and procedures, post orders and lawful orders/instructions." *Id.,* at 24. The Defendants contend that these newly added claims are time-barred under Connecticut General Statutes § 52-577. *See* Doc. 48, at 3.

Claims brought in this Court under § 1983 are governed by the three-year statute of limitations codified in Conn. Gen. Stat. § 52-577.[5] *See Maye v. Durkin*, No. 3:10-CV-194 (VLB), 2012 WL 2521101, at *4 (D. Conn. June 28, 2012); *Pinkston v. Connecticut*, No. 3:09-CV-633 (JCH), 2009 WL 2852907, at *2 (D. Conn. Sept. 2, 2009). Here, El-Massri's claims, both old and new, are based on events that occurred on November 26, 2015, and approximately three days thereafter. He did not file the proposed amended complaint against the new defendants until May

---

[5]  Section 52-577 states:

No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.

Conn. Gen. Stat. § 52-577.

24, 2019, approximately three and one-half years later. If, as in this case, the initial complaint was filed within the statute of limitations, but the amended complaint was not, the amendment must comply with Federal Rule of Civil Procedure 15(c). *See, e.g.,Rochester v. Sixth Precinct Police Station*, 370 F. App'x 244, 245 (2d Cir. 2010).

> Under Rule 15(c), an amendment "relates back" to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity.

Fed. R. Civ. P. 15(c). "Under Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Slayton v. American Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)).

With respect to El-Massri's new claims against the existing Defendants (civil assault and violation of DOC Administrative Directive 2.17), those claims satisfy Rule 15(c)(1)(B) because they arise from the same conduct complained of in the original Complaint. The claims are based on the same allegations that gave rise to the excessive force claim against Lewis, Cacioli, Williams, and Hebert. *See* Doc. 42, at 24. Therefore, the Court will review those claims for facial plausibility under § 1915A.

18

The Court may exercise supplemental jurisdiction over a state law claim pursuant to 28 U.S.C. § 1367(a). That provision states in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"The concept of supplemental jurisdiction, first codified in 28 U.S.C. § 1367 in 1990, has its origins in the judicial doctrine of pendent jurisdiction, discussed by the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29 (1966)." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (lateral citations omitted). Under *Gibbs*, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" 316 F.3d at 305 (citing and quoting *Gibbs*, 383 U.S. at 725). District courts apply the "common nucleus of operative fact" test to determine whether supplemental jurisdiction exists in a given case. *See, e.g., Morris v. Yale Univ. Sch. of Med.*, No. 05-CV-848 (JBA), 2006 WL 908155 at *3 (D. Conn. Apr. 4, 2006).

Moreover, the Second Circuit stated of the Article III constitutional concept: "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact. This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (citations and internal quotation marks omitted).

Under Connecticut law, "[a] civil assault is defined as 'the intentional causing of imminent

apprehension of harmful or offensive contact with another.'"[6] *Germano v. Dzurenda*, No. 3:09-CV-1316 (SRU), 2011 WL 1214435, at *22 (D. Conn. Mar. 28, 2011) (quoting *Dewitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). *See also Alteiri v. Colasso*, 168 Conn. 329, 334 & n.3 (1975) ("[U]nder Connecticut law, "assault" occurs when one intends to place another in apprehension of bodily harm . . . .").

In this case, El-Massri alleges that Lewis and Cacioli deployed chemical mace on his face and in his eyes at close range and then afterward Williams and Hebert "slammed" him face-first onto the floor causing him further injury. Doc. 42, at 17-18. The Court concludes that these allegations are sufficient to state a plausible claim for civil assault against Lewis, Cacioli, Williams, and Hebert. Because the assault claim arises from the same set of facts as El-Massri's excessive force claim, the Court will GRANT in part the motion for leave to amend and permit the civil assault claim to proceed against Lewis, Cacioli, Williams, and Hebert in their individual capacities for damages. *See Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *13-16 (D. Conn. Feb. 2, 2018) (exercising supplemental jurisdiction over state law assault claim).

The Court will also permit the additional allegations that the Defendants' use of chemical mace on November 26, 2015, resulted in a permanent skin irritation. These allegations relate to the extent of damages suffered by Plaintiff due to the Defendants' alleged failure to allow him to shower for three days after the November 26, 2015, incident. However, to the extent that Plaintiff may seek to add a variety of "deliberate indifference" claims against various defendants by alleging a series of later incidents that may have exacerbated his skin condition after the three-day period in

---

[6] El-Massri cites Conn. Gen. Stat. § 53a-61 in support of his assault claim against Lewis, Cacioli, Williams, and Hebert. Section 53a-61 is a criminal statute and thus has no bearing on Plaintiff's claim in the instant case.

November 2015, those allegations are beyond the scope of the claims he has pled in this action and thus disallowed. Moreover, Plaintiff will be left to his proof that his alleged ongoing skin condition was actually the result of the Defendants' actions in November 2015.

Finally, El-Massri's claim that the Defendants' actions violated DOC Administrative Directive 2.17 is not cognizable in this action. It is well-established that a claim that a state official failed to comply with his own agency's directives, policies, or procedures does not demonstrate the deprivation of a constitutionally or federally protected right. *See Harris v. Armstrong*, No. 3:02-CV-665 (DFM), 2006 WL 861023, at *11 (D. Conn. Mar. 31, 2006); *Fernandez v. Armstrong*, No. 3:02-CV-2252 (CFD), 2005 WL 733664, at *9 (D. Conn. Mar. 30, 2005). "[S]uch a system would result in the constitutionalizing of every state rule, and would not be administrable." *Harris*, 2006 WL 861023, at *11 (quoting *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)). Therefore, to the extent El-Massri seeks to add a separate claim that the Defendants violated the DOC Administrative Directives, his motion is DENIED.

### 5. *Addition of New Defendants*

In his motion for leave to amend, El-Massri also seeks to add five new defendants to this action: Warden Feliciano, Deputy Warden John Doe (name unknown), and Correction Officers Mazzona, Harris, and Corley. Doc. 42, at 15-16. He contends that the addition of these new defendants will not "involve a great deal of additional discovery," and therefore, not result in unnecessary delay. *Id.,* at 10. The existing Defendants counter that the amendment is prejudicial and does not relate back to the original pleading under Rule 15(c)(1)(C), Fed. R. Civ. P., because the statute of limitations has expired on the claims and the proposed defendants could not have known that they would be brought into this lawsuit. Doc. 48, at 3-4.

"For an amended complaint adding a new party to relate back under Rule 15(c)(1)(C), the following conditions must be met:

> (1) the claim must have arisen out of conduct set out in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party should have known that, *but for a mistake of identity*, the original action would have been brought against it; and . . . [4] the second and third criteria are fulfilled within 120 days of the filing of the original complaint, and . . . the original complaint [was] filed within the limitations period."

*Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 468-69 (2d Cir. 1995)) (emphasis in original). The Second Circuit has interpreted this rule to preclude the relation back of amendments adding new defendants where the newly added defendants were not named originally because the plaintiff did not know their identities. *Id.*; *see also Barrow*, 66 F.3d at 470 (failure to identify individual defendants when plaintiff knows that such defendants must be named is not "mistake" under Rule 15(c)(1)(C)).

In this case, El-Massri's failure to identify Feliciano, Doe, Mazzona, Harris, and Corley in the initial complaint cannot be characterized as a mistake. He asserts that he did not learn of their liability in the instant action until discovery. *See* Doc. 42, at 8. However, courts in this Circuit have rejected similar arguments as mistakes of identity for purposes of Rule 15(c)(1)(C), even when made by *pro se* litigants. *See Blue v. City of New York*, No. 14-CV-7836 (VSB), 2018 WL 1136613, at *7 (S.D.N.Y. Mar. 1, 2018) (*pro se* plaintiff's lack of knowledge of defendants until after discovery insufficient for amendment to relate back under Rule 15(c)(1)(C)); *Briggs v. County of Monroe*, No. 09-CV-6147W (MWP), 2016 WL 1296060, at *6 (W.D.N.Y. Mar. 29, 2016) (lack of knowledge does not constitute mistake within meaning of Rule 15(c)(1)(C)).

Specifically, the Second Circuit has found that Rule 15(c)(1)(C) "preclude[s] relation back

for amended complaints that add new defendants, where the newly added defendants were not named originally because the plaintiff did not know their identities." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013). *See also Arminio v. Holder*, No. 15 Civ. 5812 (NSR), 2016 WL 4154893, at *4 (S.D.N.Y. Aug. 1, 2016). Lack of knowledge, even with respect to a defendant originally named as a "John Doe," fails to constitute a "mistake of identity." *Hogan*, 738 F.3d at 518 (quoting *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995)). "Federal law determines when a section 1983 cause of action accrues, and we have ruled that accrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Id.* (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citations and internal quotation marks omitted). Because the incident at issue occurred in November 2015, Plaintiff's claims against the newly added defendants are time-barred.

As the statute of limitations has expired on El-Massri's claims, the Court agrees that the addition of these five new defendants at this late stage of the proceeding would be unduly prejudicial. Therefore, the motion for leave to amend is DENIED to the extent it seeks to add five new defendants.

**D.      Motion for Appointment of Counsel  [Doc. 49]**

Lastly, El-Massri has filed his third motion for the appointment of *pro bono* counsel to represent him in this action.  He contends that (1) his claims are factually and legally complex and will likely require expert witness testimony, (2) he has no access to a law library and has very limited knowledge of the law, (3) his efforts to obtain counsel and assistance from the Inmate Legal Aid Program ("ILAP") have been unsuccessful, and (4) he has limited ability to investigate and present

his claims.[7]  Doc. 49-1 (Plaintiff's "Memorandum in Support of Motion for Appointment of Counsel"), at 3-6.  For the following reasons, his motion is DENIED.

### 1.    Standard for Appointment of Pro Bono Counsel

The Court incorporates the standard outlined in its previous rulings on Plaintiff's first and second motions for appointment of counsel.  Doc. 19, 37.    "The court may request an attorney to represent any person unable to afford counsel."  *See* 28 U.S.C. §1915(e)(1); *see also Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).  The decision as to whether to appoint counsel for a *pro se* party should not be a "routine appointment."  *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989).  Appointment is left to the sound discretion of the district judge, considering such factors as "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel."  *Id.* at 172.

Under this District's Local Civil Rules, the plaintiff must demonstrate to the presiding judge that: (1) he is unable to afford legal counsel, (2) it is unlikely that counsel may be secured under alternative fee arrangements, and (3) that his claims have "apparent merit."  D. Conn. L. Civ. R. 83.10(c)(1).  Moreover, under Second Circuit precedent, once the indigent litigant makes a "threshold" demonstration that his "position seems likely to be of substance," the Court "should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the

---

[7]  The Court notes that Plaintiff's allegations regarding his lack of access to legal books and lack of legal knowledge conflict with his recent statement in his proposed "Amended Complaint" that "[i]n the ensuing months [since commencement of his action], Plaintiff has dedicated himself daily to studying law."  Doc. 42, at 8.

indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination." *Hodge*, 802 F.2d at 61-62. *See also Cooper*, 877 F.2d at 174 ("In trial courts, the preliminary assessment of likely merit must be undertaken somewhat more generously since the unrepresented litigant might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel.").

Thereafter, in *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997), the Court of Appeals drew upon both *Hodge* and *Cooper* to observe that "in some situations a *pro se* litigant may face substantial problems in the very development of a factual record that is needed for resolution of a case that poses complex issues."

## 2. *Analysis*

As in his previous motions for appointment of counsel [Doc. 17, 31], El-Massri represents in the instant motion that he has contacted several law firms and ILAP to request legal assistance, but he has not attached any documentation or sworn testimony in support thereof. *See* Doc. 37, at 4-5. He has not listed any addresses or phone numbers to identify these firms, nor has he submitted any proof that these firms have rejected his requests for representation. *Id.*, at 5. Thus, the Court concludes that El-Massri has once again failed to demonstrate sufficient efforts to secure legal representation on his own.

Moreover, even were thus Court to accept El-Massri's unsupported representations that he has made repeated efforts to obtain counsel, he has failed to establish that his claims are sufficiently meritorious to warrant the appointment of *pro bono* counsel. Despite several months of discovery, he has not yet presented evidence to support his claims of excessive force, unconstitutional

conditions of confinement, deliberate indifference to medical needs, or failure to supervise. *See* Doc. 37, at 6-7 (no additional information beyond allegations in complaint showing that case presents likelihood of success). Moreover, the Court, in this very Ruling, grants El-Massri the opportunity to amend his complaint to add a civil assault claim against the Defendants, which at this stage, lacks any evidentiary support. Given the preliminary stage of these proceedings, El-Massri's case has not "pass[ed] the test of likely merit" under *Cooper*, 877 F.2d at 173.

Furthermore, as stated in its previous Ruling, the Court does not find that El-Massri's constitutional claims are complex. *See* Doc. 37, at 7-8. The issues in this action are both discrete and straightforward, and the facts necessary to prove these claims appear to be within Plaintiff's knowledge or grasp. For example, Plaintiff was present at the alleged incident of "excessive force" and was thus privy to the kind and degree of force implemented and the apparent intent of the officers on that occasion. Plaintiff also knows whether he was sprayed with a harmful chemical and has access to his medical reports to show whether and to what extent he was injured by said exposure. There is no present basis for the Court to conclude that El-Massri's claims will require extensive investigation. Therefore, the motion for appointment of counsel is DENIED without prejudice.

### III. CONCLUSION AND ORDERS

(1)     The motion requesting more sufficient responses to El-Massri's requests for admissions [Doc. 39] is GRANTED in part and DENIED in part. Within **twenty (20) days** from the date of this Order, Defendant Cacioli shall file an amended response to Request for Admissions Nos. 1 and 2.

(2)     The motion for the Court to appoint an expert witness [Doc. 41] is DENIED. Should he

decide to retain the services of a medical expert in this action (*e.g.*, to prove damages), he may do so; but the Court cannot pay for such an expert under 28 U.S.C. § 1915.

(3)     The motion for leave to amend the Complaint [Doc. 42] is GRANTED in part and DENIED in part.  The Clerk is hereby directed to docket the proposed "Amended Complaint" [Doc. 42, at 14-27] as a separate entry, but the parties are advised that it becomes operative only to the extent indicated by the Court's ruling herein.  Therefore, the  following represents the list of plausible claims that may proceed in this case:

     (a)     Fourteenth Amendment excessive force claim against Williams, Cacioli, Lewis, and Hebert; (along with failure to intervene to prevent such force against Goode and McGivney);[8]

     (b)     Connecticut common law civil assault claim against Williams, Cacioli, Lewis, and Hebert;

     (c)     Fourteenth Amendment conditions of confinement claim against all individual defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) regarding failure to permit El-Massri to shower for three days;

---

[8]  The Court notes that Plaintiff continues to allege that Goode and McGivney were present at the scene on November 26, 2015, during the alleged "excessive force" incident.  The Court previously construed the "excessive force" claim to encompass a "failure to intervene" claim against these two defendants and will also allow that claim to proceed in the Amended Complaint.  "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases). *See also Moore v. Parsons*, No. 3:18-CV-00507 (CSH), 2018 WL 1882858, at *5 (D. Conn. Apr. 19, 2018) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Plaintiff is reminded, however, that he will be left to his proof regarding the merits of any such claim.

(d) Fourteenth Amendment deliberate indifference to serious medical needs against all individual defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) for failure to permit El-Massri to shower for three days;[9]

(e) Failure to supervise or train against Marmora.

All claims regarding the violation of DOC Administrative Directives are DISMISSED, as are all claims against the five individuals Plaintiff had requested to add as defendants (Feliciano, Doe, Mazzonna, Corley, and Harris). In short, none of the proposed new defendants will be added in this action. Also, all claims against the existing individual Defendants in their official capacities remain barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986). Only claims against state officials in their individual capacities for damages may proceed.[10] *See* Doc. 9, at 7-9 (holding that El-Massri may only bring claims for damages against the defendant officials in their personal capacities).

_____

[9] No claim in Plaintiff's Amended Complaint, or original Complaint for that matter, addresses an alleged failure by Defendants to provide medical care for conditions following the three days after the November 26, 2015, incident. Rather, his claims, brought under the Fourteenth Amendment, all relate to the actions of Defendants during the period when he was a "pretrial detainee" in the NHCC. Doc. 42 (Proposed "Amended Complaint"), at 14. With respect to damages, however, Plaintiff has now included allegations that he suffers from "an extremely irritating and painful skin disorder that is a direct result from these defendants' actions." *Id.*, at 22 (¶ 13). Moreover, he alleges that "[t]his disorder is a permanent injury and disability that causes burning red inflammation, severe scarring all over his body, and bald spots in his hair." *Id.*

[10] There appear to be no grounds for injunctive relief in the "Amended Complaint" in that the incident at issue, and alleged events following, occurred while Plaintiff was detained in NHCC, and he is now an inmate in Garner Correctional Institution. "In [the Second] [C]ircuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citations omitted).

(4)     The Defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) shall file an amended answer or response within **twenty-one (21) days** from the date of this Order.

(5)     Discovery shall be completed no later than **two months (60 days)** from the date of this Order. All motions for summary judgment shall be filed within **three months (90 days)** from the date of this Order. In light of the fact that this case has already been pending for nearly one year, no motions for extension of time will be granted absent a showing of good cause.

(6)     The third "Motion for Appointment of Counsel" [Doc. 49] is DENIED without prejudice. The foregoing is So Ordered.

Signed: New Haven, Connecticut
        July 31, 2019

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States Judge