UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW EL-MASSRI,<br><br>    Plaintiff,<br> v.<br><br>NEW HAVEN CORRECTIONAL CENTER, DEPUTY WARDEN MARMORA, LIEUTENANT CACIOLI, LIEUTENANT LEWIS, LIEUTENANT WILLIAMS, OFFICER HEBERT, OFFICER McGIVNEY, NURSE GOODE,<br><br>    Defendants. | Civil Action No.<br>No. 3:18-cv-1249 (CSH)<br><br><br><br>OCTOBER 8, 2019 |

## RULING ON PLAINTIFF'S MOTIONS TO COMPEL [Doc. 50, 51]

**Haight, Senior District Judge:**

### I. INTRODUCTION

*Pro se* plaintiff, Andrew El-Massri, an inmate currently incarcerated at the Garner Correctional Institution in Newtown, Connecticut, has filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against the New Haven Correctional Center ("NHCC"), where he was previously confined, and seven of the facility's employees in their individual and official capacities: Deputy Warden Marmora, Lieutenant Cacioli, Lieutenant Lewis, Lieutenant Williams, Officer Hebert, Officer McGivney, and Nurse Goode (herein collectively "Defendants"). In brief, El-Massri's claims stem from Defendants' alleged use of physical force and Oleoresin Capsaicin ("OC") spray upon him following an altercation he had with another inmate on November 26, 2015, at NHCC, where he

1

was then confined as a pretrial detainee. Plaintiff also alleges that Defendants wrongfully refused to allow him to shower for three days thereafter, thereby preventing him from decontaminating himself from the OC spray. He claims that this failure to allow him to shower constituted an unconstitutional condition of confinement and deliberate indifference to his serious medical needs.

After reviewing El-Massri's claims pursuant to 28 U.S.C. § 1915A, the Court issued an "Initial Review Order" which permitted El-Massri's Fourteenth Amendment excessive force claim to proceed against Williams, Cacioli, Lewis, Hebert, Goode, and McGivney, and a Connecticut common law civil assault claim to proceed against Williams, Cacioli, Lewis, and Hebert. *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2018 WL 4604308, at *11 (D. Conn. Sept. 25, 2018). Additionally, the Court allowed Plaintiff's Fourteenth Amendment claims for unconstitutional conditions of confinement and deliberate indifference to serious medical needs to proceed against all individual defendants and a supervisory liability claim to proceed against Marmora.[1] *Id.*

Thereafter, El-Massri moved to amend his Complaint, and the Court granted that motion in part and denied it in part. *El-Massri v. New Haven Corr. Ctr.*, No. 3:18-CV-1249 (CSH), 2019 WL 3491639, at *14 (D. Conn. July 31, 2019). In its Ruling, the Court delineated the plausible claims that may proceed in the Amended Complaint:

> (a) Fourteenth Amendment excessive force claim against Williams, Cacioli, Lewis, and Hebert (along with failure to intervene to prevent such force

---

[1] The Court dismissed all claims against NHCC because "[n]either a Department of Correction nor a correctional institution is a 'person' within the meaning of § 1983." 2018 WL 4604308, at *4 (citation omitted). Therefore, there was "no arguable legal basis for a § 1983 action against NHCC." *Id.*

2

against Goode and McGivney);[2]

    (b)    Connecticut common law civil assault claim against Williams, Cacioli, Lewis, and Hebert;

    (c)    Fourteenth Amendment conditions of confinement claim against all individual defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) regarding failure to permit El-Massri to shower for three days;

    (d)    Fourteenth Amendment deliberate indifference to serious medical needs against all individual defendants (Williams, Cacioli, Lewis, Hebert, Goode, McGivney, and Marmora) for failure to permit El-Massri to shower for three days; and

    (e)    failure to supervise or train against Marmora.

*Id.* All claims regarding an alleged violation of DOC Administrative Directives were dismissed, as were all claims against five other individuals Plaintiff had requested to add as defendants. *Id.* Subsequently, the Defendants filed their answer to the amended complaint. *See* Doc. 78.

On June 21, 2019, El-Massri filed two motions to compel discovery and supporting memoranda. *See* Doc. 50 ("Plaintiff's Motion to Compel Disclosure"); Doc. 50-1 ("Memorandum of Law in Support of Plaintiff's Motion to Compel Disclosure of Documents"); Doc. 51 ("Plaintiff's Motion to Compel Discovery"); Doc. 51-1 ("Memorandum of Law in Support of Plaintiff's Motion to Compel Discovery Documents"). In these motions, he seeks to compel disclosure of "unredact[ed] training records for all individual defendants," "any records of misconduct within the

---

[2] Defendants Goode and McGivney were present at the scene on November 26, 2015, during the alleged "excessive force" incident and did not intervene.

[Department of Correction] prior to the incident and up to [the] present da[y]," "[a] copy of all in-service training [records] of each individual defendant[] . . . for any state and federal statutes and regulations that must be adhered to in the discharge of official duties as state employees," and "[a] copy of all pre-service training [records] at Maloney CTSD [Center for Training and Staff Development] for all individual defendants for any state and federal statutes and regulations that must be adhered to in the discharge of official duties as state employee[s]." Doc. 50-1, at 8; Doc. 51-1, at 3. The Defendants have objected to both motions on the grounds that the requests are overly broad and seek information that is not relevant to the claims stated in the amended complaint. Doc. 55 ("Defendants' Objection to Plaintiff's Motion to Compel Discovery"); Doc. 56 ("Defendants' Objection to Plaintiff's Motion to Compel Discovery"). The Court resolves both motions in this Ruling.

## II. DISCUSSION

### A. Standard for Motion to Compel

"Where a party 'fails to produce documents . . . as requested,' Federal Rule of Civil Procedure 37 permits '[the] party seeking discovery . . . [to] move for an order compelling an answer, designation, production or inspection.'" *In re Aggrenox Antitrust Litig.*, No. 3:14-CV-572 (SRU), 2017 WL 5885664, at *1 (D. Conn. Nov. 29, 2017) (quoting Fed. R. Civ. P. 37(a)(3)(B)). *See also Scott v. Arex, Inc.*, 124 F.R.D. 39, 40 (D. Conn. 1989) (Where documents "discoverable within the contemplation of Rule 26, Fed. R. Civ. P., . . . are not produced," Rule 37 "permit[s] the party desiring discovery to seek a court order."). "Because 'the Federal Rules . . . are to be construed liberally in favor of discovery,' *McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 30 (D. Conn. 2004), 'the party resisting discovery bears the burden of showing why discovery should

4

be denied,'" *Cole v. Towers Perrin Forster & Crosby*, 256 F.R.D. 79, 80 (D. Conn. 2009) (Smith, *J.*)."
*In re Aggrenox Antitrust Litig.*, 2017 WL 5885664, at *1.

All "[m]otions relative to discovery," including motions to compel, "are addressed to the discretion of the [district] court." *Soobzokov v. CBS, Quadrangle/New York Times Book Co.*, 642 F.2d 28, 30 (2d Cir. 1981). "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998). The discovery orders "will only be reversed if [the district court's] decision constitutes an abuse of discretion." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991) (citing, *inter alia*, *Bobal v. Rensselaer Polytechnic Inst.*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943 (1991)).

**B. Plaintiff's Motions to Compel**

　　*1. Unredacted Training Records*

In both motions to compel, El-Massri seeks an order broadly compelling the Defendants to produce their unredacted training records for their employment as state employees. Specifically, he seeks "unredact[ed] training records," "in-service training [records] . . . for any state and federal statutes and regulations that must be adhered to in the discharge of [their] official duties as state employees," and "pre-service training [records] at Maloney CTSD."[3] Doc. 50-1, at 8; Doc. 51-1, at 3.[4] He argues that such records are relevant to show whether the Defendants were trained to follow,

---

　　[3] The Court takes judicial notice that the Maloney Center for Training and Staff Development is the Department of Correction's principal training site for in-service and pre-service training of correctional employees. *See* https://portal.ct.gov/DOC/Org/Training-and-Staff-Development.

　　[4] The Court notes that Plaintiff states that the documents he requests would "otherwise [be] in counsel['s] possession" if he were represented by counsel. Doc. 50-1, at 2. However, Plaintiff is

and/or purposely violated, proper protocol and department regulations when responding to the altercation on November 26, 2015, and in their treatment of him in the days that followed. *See* Doc. 50-1, at 6; Doc. 51-1, at 2.

In response, Defendants have represented that they provided El-Massri with redacted versions of all of their training records, which they argue were "reasonably related to the issues before the [C]ourt: excessive force and deliberate indifference regarding the use of the [OC] spray." Doc. 55, at 2; Doc. 56, at 2. "Non-relevant portions of each Defendant's training records were excluded." Doc. 55, at 2.

The case docket corroborates that El-Massri has received the Department of Correction ("DOC") Administrative Directives on the "Use of Force" and the dates and times certifying the Defendants' completion of training in the use of OC spray, behavior management, employee conduct, report writing, use of force and compliance techniques, transportation of inmates, code simulation, and emergency procedures. *See* Doc. 61 ("Motion for Sanctions for Spoliation of Evidence and Facts in Support of Motion"), Ex. A-C, E. These records cover a period from April of 2010 to August 2016, which is well in excess of the November 2015 period applicable in this case. *See* Doc. 61-4

El-Massri counters that the documents provided "are so overly redacted that they are useless." Doc. 50-1, at 3. He also states that the "defendants['] names are covered." *Id.*

However, according to Defendants, only non-relevant portions of these training records were excluded. Doc. 55, at 2. Moreover, the Defendants' last names appear plainly in the upper left hand

---

mistaken. Because he is a *pro se* litigant, the Court clarifies that counsel would have no rights to discovery that would exceed those of a *pro se* litigant. The scope of discovery remains the same for all litigants, as set forth in Rule 26(b)(1), Fed. R. Civ. P., which generally allows "[p]arties [to] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."

corner of these training records. Doc. 61-4.

Furthermore, Defendants assert that if they released all of their training records to an inmate, there could be a negative "impact on the safety of each of these individuals" because such training details "weapons handling, tactical training, [and each defendant's] command of knowledge of emergency situations." Doc. 55, at 2. If disseminated within the prison, such information could place the Defendants at risk. *Id.* Defendants also point out that a number of them have over twenty years of experience at the Department of Corrections so their pre-service training, completed years ago, would have little probative value in this case. *Id.* They thus object to Plaintiff's second motion to compel as overly broad.

Upon review of El-Massri's requests for disclosure of training records and the materials produced, the Court agrees with Defendants that the requests for additional disclosure are overly broad. The claims in this case are limited to the Defendants' use of physical force and OC spray during the altercation on November 26, 2015, and their refusal to allow Plaintiff to decontaminate himself during the three days following the incident. As Defendants have indicated, their training records "were redacted to trainings that could reasonably be related to the issues before the court: excessive force and deliberate indifference regarding the use of the [OC] spray;" and "[n]on-relevant portions of each Defendant's training records were excluded." Doc. 55, at 2.

As to training record redactions for prison security measures, prison officials must be granted reasonable deference in the protection of their facilities. *Proctor v. LeClaire*, 846 F.3d 597, 608-09 (2d Cir. 2017) ("[W]e are mindful of the context in which this case arises and the deference we owe prison officials in carrying out their daily tasks."); *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.1990) ("Balanced against the constitutional protections afforded prison inmates . . . are the

interests of prison officials charged with complex duties arising from administration of the penal system.") (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)); *Respress v. Coughlin*, 585 F. Supp. 854, 857 (S.D.N.Y. 1984) ("In determining the extent to which constitutional rights are withdrawn upon incarceration, the Supreme Court has mandated that wide-ranging deference is to be accorded the operational considerations of prison administrators" and "[r]ecognized legitimate considerations include the ability of prison officials to ensure prison security against escape, maintain internal order and discipline, and further rehabilitation of prisoners.") (citing *Procunier v. Martinez*, 416 U.S. 396, 412 (1974)).

In the case at bar, El-Massri has failed to show the relevance of the redacted portions in the training records. As Defendants represent, he has received all materials related to the correction officials' responsibilities related to his constitutional or common law claims for excessive force, assault, unlawful conditions of confinement, and deliberate indifference to medical needs. Plaintiff has thus failed to establish sufficient grounds to receive the redacted portions of the training records.

In addition, Plaintiff has brought a federal action for violation of his constitutional rights, and whether Defendants followed all relevant DOC policies and regulations in their treatment of El-Massri during the dates in question does not provide a basis for a § 1983 claim. *See A'Gard v. Perez*, 919 F. Supp. 2d 394, 403 (S.D.N.Y. 2013) ("Whether prison regulations . . . were followed precisely is not a basis to conclude that any constitutional rights have been violated."). "Any alleged violations of prison directives or regulations do not give rise to a federal claim, because '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'"

*Id.* (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir.1990)).[5]

In sum, the Court will deny El-Massri's request to compel production of Defendants' unredacted training records as overly broad in time and scope. He has received the requested training records of Defendants for the relevant period with redactions of information that is not relevant and/or may implicate prison security by revealing emergency strategies and weapons handling.

### 2. *Records of Misconduct*

In his first motion to compel, El-Massri requests disclosure of "any records of misconduct within the [DOC] prior to [the] incident and up to [the] present date." Doc. 50-1, at 8. He argues that such records may show that the Defendants acted with intent to subject him to excessive force or that they may exhibit "a pattern of . . . violations." *Id.,* at 3-4. He also asserts that such records may "impeach the [Defendants'] integrity and credibility." *Id.*, at 4.

The Defendants object to this request on the ground that it is "overbroad" because it is not limited in time.[6] Doc. 55, at 2-3. In addition, they assert that "tenuous, unsupported allegations" made by other inmates or detainees are not relevant to whether Defendants violated El-Massri's constitutional rights on November 26, 2015, and the days following that event. *Id.*, at 2. As to

---

[5] El-Massri has not asserted any claim regarding the Defendants' violation of a state or federal statute in his Amended Complaint. Moreover, even if relevant statutes may hypothetically exist, El-Massri may research them himself, in the same manner in which he has obtained case law to support his arguments in his numerous court filings and memoranda supporting his motions. He has failed to establish that such research is not possible. *See* Part II.B.3., *infra.*

[6] Defendants point out that in his motion to compel, Plaintiff has attempted to modify his original discovery request for "any grievances for misconduct" by specifying issues before this Court. Doc. 55, at 2. They maintain that even if the subject of the request were limited in that way, Plaintiff has still failed to limit the applicable time period.

Plaintiff's claims that any such alleged misconduct bears on their credibility, Defendants reply, "Any inmate can file a grievance: whether or not there is merit contained within the grievance is a different issue." *Id.*

Furthermore, Defendants argue that Plaintiff's request for items in their personnel files such as "reprimands, violations of policy or administrative directives" are overly broad. *Id.*, at 3. Some of the Defendants "have over twenty years of experience" so that "[t]he relevance of the information potentially sought by the Plaintiff, without time limitations, may be so remote in time as to have minimal, [or even] no probative value." *Id.*. Finally, as to requests for claims regarding "excessive force or deliberate indifference," Plaintiff's requested materials lack probative value because "[t]he veracity of such claims are not vetted until proven" with evidence. *Id.* Such claims are thus not relevant to prove the claims in Plaintiff's present complaint. *Id.*

The Court agrees that, as written, El-Massri's request for any records of misconduct from before November 26, 2015, till now is indeed "overbroad." Such a request would logically include events and complaints totally unrelated in time and substance to those which give rise to his present constitutional claims. This Court has rejected similarly overbroad requests for records of alleged misconduct involving unrelated matters. *See, e.g., Osborne v. Vasquez*, No. 3:12-CV-213 (JCH), 2013 WL 995070, at *3 (D. Conn. Mar. 11, 2013) (plaintiff's request for all complaints previously made against defendant police officers held overbroad); *Dickinson v. Meshum*, No. 3:05-CV-1093 (WWE), 2006 WL 1600961, at *1 (D. Conn. June 5, 2006) (holding requested defendant officers' "general history of any and all civilian complaints and internal disciplinary proceedings brought against them" to be "not relevant" to plaintiff's excessive force claim because "the details of any possible prior, unrelated matters have no bearing on plaintiff's claim"). It thus follows that El-

Massri's request to compel disclosure of "any records of misconduct within the [DOC] prior to the incident and up to [the] present date," Doc. 50-1, at 8, will be denied.

As Plaintiff himself recognizes, relevant evidence "has [a] tendency to make a fact more or less probable than it would be without evidence; *and the fact is of consequence in determining the action*." Fed. R. Evid. 401(a)-(b) (emphasis added). If the materials sought relate to other times and events, one must demonstrate how they are relevant or probative with respect to the present action. Plaintiff has failed to make such a demonstration.

Finally, Defendants represent that they have subsequently provided Plaintiff with a supplemental response to his request for disciplinary items in their personnel files by indicating that "there is nothing [no material] in response to the request for discipline or misconduct within each [or any] of the Defendants' personnel files." Doc. 55, at 3. Based on this representation that there are no responsive disciplinary documents to produce, the motion is moot as to these items.

### *3. State and Federal Statutes*

In his second motion to compel, Plaintiff requests that Defendants be ordered "to produce for inspection and copying the documents requested in Plaintiff's Third Request for production of documents." Doc. 51, at 1. Those documents include "State and Federal statutes that defendants are trained to comply with in the discharge of their official duties as Connecticut Correctional Officers." Doc. 51-1, at 1-2. Plaintiff suggests that due to his incarceration, Defendants' counsel can more easily perform the legal research necessary to find these statutes. *Id.*, at 3. He argues that he is "entitled to learn these laws to prove his case." *Id.*

Although he is *pro se*, Plaintiff is not entitled to have Defendants' counsel perform his legal research. He may not simply demand that Defendants research and turn over the text of unspecified

11

state statutes and regulations. Additionally, courts have recognized legal research as an attorney's "work product*." See, e.g., In re Subpoena Duces Tecum Served on Rosenman & Colin*, No. 3:92 CV 00301-WWE, 1996 WL 527331, at *2, *4 (S.D.N.Y. Sept. 16, 1996) (Legal research performed in anticipation of, or for use during, litigation is regarded as "attorney work product;" "[b]ecause all underlying documents ha[d] been produced, the plaintiffs ha[d] no 'substantial need' for the documents in these categories."); *New Gold Equities Corp. v. Capital Growth Real Estate, Inc.*, No. 89 CIV. 5472 (LBS), 1990 WL 180538, at *6 (S.D.N.Y. Nov. 13, 1990) (holding counsel's "legal research" to be "self-evidently work-product"). In *Hickman v. Taylor*, 329 U.S. 495, 510 (1947), the Court recognized a qualified immunity from discovery for the "work product of the lawyer" so that such material could be discovered only upon a substantial showing of "necessity or justification."

Furthermore, the relevance of these unidentified state and federal regulations has not been demonstrated. As described *supra*, whether Defendants followed all relevant DOC policies and regulations in their treatment of El-Massri in November 2015 does not provide a basis for a claim that his constitutional rights were violated. *See A'Gard*, 919 F. Supp. 2d at 403 ("Whether prison regulations . . . were followed precisely is not a basis to conclude that any constitutional rights have been violated."). In addition, El-Massri has not asserted any claim regarding the Defendants' violation of a state or federal statute in his amended complaint. Finally, even if El-Massri were able to show that there are relevant state and federal statutes at issue, he has not established that he is incapable of researching them in the same manner he has obtained case law to support his arguments in his motion papers.

In El-Massri's final itemization of documents he seeks with respect to state and federal statutes and regulations, he once again requests Defendants' training records. Specifically, he asks

12

the Court to compel production of "all in-service training [records] of each individual defendants [sic] named in [the] case for any [s]tate and [f]ederal statutes and regulations that must be adhered to in the discharge of official duties as state employees;" and "[a] copy of all pre-service training [records] at Maloney CTSD for all individual defendants for any state and federal statutes and regulations that must be adhered to in the discharge of official duties as state employee." Doc. 51-1, at 3. As set forth *supra*, at Part II.B.1., the Court finds such requests for every in-service training records related to all statutes and regulations to be overly broad. Defendants have indicated that they have already produced all training records relevant to the claims at issue in this case. Moreover, certain portions redacted pertained to training regarding security measures applied in the prison, including weapons training and security tactics in emergency situations.

Lastly, even taking into account El-Massri's *pro se* status, he is not entitled to demand Defendants' counsel to perform legal research regarding statutes and regulations. Otherwise, it would violate the "work product" privilege and /or enable El- Massri "to litigate on wits borrowed from the adversary." *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 30 (1983). He is not entitled to demand that Defendants research the text of unidentified state statutes and regulations that he hypothesizes were related to the Defendants' training. He has cited numerous legal authorities in his various legal filings so it appears he has some means of accessing legal research.[7] His request to compel production of such statutes and regulations will be denied as both overly broad and outside the

---

[7] The Court takes judicial notice that Garner has a library which may be utilized by inmate request. *See* State of Connecticut, Department of Correction, "Garner Correctional Institute, Inmate Handbook" (Dec. 2013), at p. 27.

bounds of proper discovery.[8]

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motions to compel discovery [Docs. 50, 51] are hereby DENIED. The parties are reminded of their duties to fully cooperate during discovery to expedite this matter. Upon completion of discovery, should they find it helpful, they may jointly move for a settlement conference before a magistrate judge.

Signed:    New Haven, Connecticut
           October 8, 2019

*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[8] In addition to using the library at Garner, Plaintiff is once again encouraged to seek the assistance of Connecticut's Inmates' Legal Assistance Program ("ILAP") with respect to researching his legal claims.